UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GRACE STEPHEN,

    Plaintiff,

v.

METROPOLITAN LIFE
INSURANCE COMPANY,

    Defendant.

CIVIL ACTION NO.

1:14-CV-734-MHS

## ORDER

Plaintiff Grace Stephen filed this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, seeking to recover long-term disability ("LTD") benefits under an employee welfare benefit plan (the "Plan") sponsored by her former employer, Novartis Pharmaceuticals Corporation ("Novartis"), and administered by defendant Metropolitan Life Insurance Company ("MetLife"). Currently before the Court are plaintiff's motion for summary judgment and defendant's motion for judgment on the administrative record. For the following reasons, the Court denies plaintiff's motion and grants defendant's motion.

AO 72A
(Rev.8/82)

Background

On September 12, 2008, while engaged in her employment as a pharmaceutical sales representative for Novartis, plaintiff was injured in an automobile accident. As a result of her injuries, plaintiff filed a claim for LTD benefits under the Plan. MetLife approved plaintiff's claim and she was paid LTD benefits for 24 months. Thereafter, benefits were denied because MetLife determined that plaintiff's disability fell within a Plan provision limiting payment of LTD benefits to a maximum of 24 months if the claimant was disabled because of a neuro-musculoskeletal or soft tissue disorder. Plaintiff contends that MetLife's decision was wrong because her disability is due to radiculopathy[1] stemming from herniated lumbar disks, and MetLife's Disability Claims Guidelines state that documented radiculopathy is an exception to the limitation of LTD benefits for neuro-musculoskeletal or soft tissue disorders.

Discussion

Defendant moves for judgment on the administrative record pursuant to FED. R. CIV. P. 52, while plaintiff moves for summary judgment pursuant

---

[1] Radiculopathy is a "[d]isorder of the spinal nerve roots." Stedman's Medical Dictionary (26th ed. 1995).

2

to FED. R. CIV. P. 56. Both parties agree, however, that the Court's review of this case is limited to the administrative record.[2] When a decision is based on an agreed-upon record, findings of fact and conclusions of law pursuant to Rule 52, rather than summary judgment pursuant to Rule 56, are preferred. *See Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352, 1363 n.5 (11th Cir. 2008). "The findings and conclusions . . . may appear in an opinion or a memorandum filed by the court." FED. R. CIV. P. 52(a)(1). The Court bases its findings and conclusions on the administrative record that was available to MetLife when it decided to terminate plaintiff's LTD benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008).

I.     Findings of Fact

MetLife is the Plan's claim administrator and administers claims for LTD benefits pursuant to a General Services Agreement ("GSA") with Novartis. LTD benefits are self-funded by Novartis and are payable under the Plan based on MetLife's application of the Plan's terms. Novartis delegated to MetLife "responsibility and discretionary authority for

---

[2] Plaintiff contends that MetLife erred by failing to follow its Disability Claims Guidelines, but she does not rely on any evidence of disability beyond the administrative record.

determining eligibility for disability benefits, and for construing Plan terms . . . ." GSA [Doc. 34-3] § 4.A.1. Thus, MetLife "is responsible for processing and deciding all claims for benefits . . . , as well as all appeals of denied claims." Summary Plan Description ("SPD") [Doc. 34-2] at 12. "Benefits are payable . . . only if MetLife determines, in its discretion, that the claimant is entitled to them." *Id.* "MetLife's decisions are final and binding." *Id.* The GSA and the SPD "are the official plan documents" and are "used to resolve any questions about benefits" under the Plan. *Id.*

Plan participants are eligible for LTD benefits when they "qualify as disabled." *Id.* at 4. "Disabled" or "disability" means that

> because of sickness, pregnancy or accidental injury you are receiving appropriate care and treatment from a doctor on a continuing basis, and:
>
> ■ during your elimination period . . . and the next 24-month period, you are unable to earn more than 80% of your pre-disability earnings or indexed pre-disability earnings at your own occupation for any employer in your local economy, or
>
> ■ after the first 24 months LTD benefits are paid, you are unable to earn more than 60% of your indexed pre-disability earnings from any employer in your local economy at any gainful occupation for which you are reasonably qualified, taking into account your training, education, experience, and pre-disability earnings.

*Id.* at 4-5.

The Plan contains a limited disability benefit ("LDB") provision, which states in pertinent part:

> Monthly LTD benefits under this plan are payable for up to a maximum of 24 months during your lifetime if you are disabled because of a mental, nervous disorder or disease or neuro-musculoskeletal or soft tissue disorder, unless the disability results from:
> - schizophrenia
> - bipolar disorder
> - dementia
> - organic brain disease.

*Id.* at 5.

On September 12, 2008, while working as a sales representative for Novartis and a participant in the Plan, plaintiff was injured in a motor vehicle accident. Plaintiff was diagnosed with herniated lumbar disks and radiculopathy. MetLife determined that plaintiff was disabled, and she began receiving LTD benefits on March 14, 2009. On January 14, 2011, MetLife notified plaintiff that because she was disabled due to a neuro-musculoskeletal or soft tissue disorder, pursuant to the Plan's LDB provision, her LTD benefits would end on March 13, 2011. Plaintiff appealed, and on April 1, 2013, MetLife upheld its decision terminating plaintiff's LTD benefits. On March 13, 2014, plaintiff filed this action.

5

II.   Conclusions of Law

The Eleventh Circuit has established the following multi-step framework to guide courts in reviewing an ERISA claim administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is '*de novo* wrong,' then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is '*de novo* wrong' and he was vested with discretion in reviewing claims, then determine whether 'reasonable' grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict of interest, then end the inquiry and affirm the decision.
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011) (quoting *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)).

For the following reasons, applying the *de novo* standard, the Court concludes

that MetLife's decision was correct. Therefore, the Court ends the inquiry at the first step and affirms the decision.

The Plan's LDB provision limits the duration of LTD benefits to 24 months if a participant is "disabled because of mental, nervous disorder or disease or neuro-musculoskeletal or soft tissue disorder, unless the disability results from . . . schizophrenia[,] bipolar disorder[,] dementia[, or] organic brain disease." SPD [Doc. 34-2] at 5. The administrative record establishes that plaintiff's disability is due to a neuro-musculoskeletal or soft tissue disorder and did not result from any of the listed exceptions. Plaintiff cites no evidence and makes no argument to the contrary. Therefore, under the LDB provision, the duration of plaintiff's LTD benefits was limited to 24 months, and MetLife was not wrong to terminate the benefits at the expiration of that time period. *See Bland v. Metro. Life Ins. Co.*, No. 5:11-CV-277(MTT), 2013 WL 56117, at *6 (M.D. Ga. Jan. 3, 2013) (concluding that MetLife was not wrong to terminate LTD benefits after 24 months under an identical LDB provision because the plaintiff was disabled due to a neuro-musculoskeletal or soft tissue disorder).

Plaintiff argues that the LDB provision does not apply in this case because her disability stems from radiculopathy, and MetLife's Disability

7

Claims Guidelines provide that disability resulting from radiculopathy is an exception to the LDB provision. Specifically, plaintiff relies on a portion of the Guidelines setting out "the standard language" for an LDB provision, which states in part: "Your Disability benefits will be limited as stated above for . . . [n]euromuscular, musculoskeletal, or soft tissue disorder[s] . . . unless the Disability has objective evidence of . . . [r]adiculopathies . . . ." MetLife Disability Claims Guidelines [Doc. 36] at 000003. The Court finds this argument without merit for two reasons.

First, the Disability Claims Guidelines are not included in the official documents governing the Plan. Therefore, the Guidelines cannot be used to override the plain terms of these governing documents. As noted above, the GSA and SPD "are the official plan documents," which "will be used to resolve any questions about benefits" under the Plan. SPD [Doc. 34-2] at 12. A plan administrator must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments" are consistent with ERISA's statutory requirements. 29 U.S.C. § 1104(a)(1)(D); see *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1109 (7th Cir. 1998) ("It is well established that it is the language of an ERISA plan that controls."); *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997) ("A plan

8

administrator may have discretion when interpreting the terms of the plan; however, the interpretation may not controvert the plain language of the document.") Therefore, MetLife was obligated to follow the plain terms of the SPD's provision limiting the duration of LTD benefits for a disability resulting from neuro-musculoskeletal or soft tissue disorders, which does not contain any exception where there is objective evidence of radiculopathies.[3]

Second, even if the Disability Claims Guidelines were applicable, the language that plaintiff quotes in isolation, regarding an exception to the LDB provision where there is objective evidence of radiculopathies, is described by the Guidelines as merely the "standard language" for such a provision. MetLife Disability Claims Guidelines [Doc. 36] at 000003. The Guidelines specifically note that "[v]arious options are available such as to separate each

---

[3] In her reply brief, plaintiff argues for the first time that the GSA specifically incorporates the Disability Claims Guidelines into the official documents governing the Plan. Pl.'s Reply Br. [Doc. 41] at 3. Generally, the Court will "not consider arguments that are presented for the first time in a reply brief." *Rindfleisch v. Gentiva Health Servs., Inc.*, 22 F. Supp. 3d 1295, 1301 (N.D. Ga. 2014) (citation omitted). Even if the Court were to consider it, plaintiff's argument is without merit. Plaintiff cites the following provision in the GSA: "**Standard Administrative Manuals**: MetLife will prepare, update and provide Customer with standard manuals to assist in Plan administration." GSA [Doc. 34-3] § 2.D. (bold in original). This provision, however, clearly refers to manuals that MetLife will provide to Novartis, and not to the Disability Claims Guidelines, which state that they are for "Internal Use Only" by MetLife's "claims associate[s]." MetLife Disability Claims Guidelines [Doc. 36] at 1, 7.

condition, to combine some of the conditions, and not to limit some or any of the conditions." *Id.* "Therefore, it is important to consult the customer's certificate." *Id.* The Guidelines repeatedly emphasize this point: "Since the LDB limitations can vary for different types of disabling conditions and per Plan, the claims associate must always review the Plan for the specific LDB provision language so the appropriate benefit duration is applied." *Id.* at 000009; *see also id.* ("The claims associate must carefully review the plan language to properly administer the Limited Disability Benefit provisions."); *id.* at 000013 ("The claims associate should always refer to the Plan document (i.e., Summary Plan Description, Certificate of Insurance, etc.) as it defines the provision and conditions in detail."). Thus, as the Guidelines repeatedly instruct, to determine whether benefits are limited by an LDB provision, reference must be made to the specific language of the governing plan documents. That is precisely what MetLife did in this case.

Summary

For the foregoing reasons, the Court DENIES plaintiff's motion for summary judgment [Doc. 26], GRANTS defendant's motion for judgment on the administrative record [Doc. 34], and AFFIRMS defendant's decision to

terminate plaintiff's LTD benefits. The Clerk is DIRECTED to enter final judgment accordingly.

IT IS SO ORDERED, this 23rd day of November, 2015.

_____
Marvin H. Shoob, Senior Judge
United States District Court
Northern District of Georgia